**RECORD IMPOUNDED**

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0239-16T4
A-0242-16T4

NEW JERSEY DIVISION OF CHILD
PROTECTION AND PERMANENCY,

      Plaintiff-Respondent,

  v.

E.M. and C.G.,

      Defendants-Appellants.

_____

IN THE MATTER OF THE GUARDIANSHIP OF
Ca.G., Ti.G., and Ta.G., minors.

_____

        Argued October 3, 2017 — Decided October 12, 2017

        Before Judges Fisher and Sumners.

        On appeal from Superior Court of New Jersey,
        Chancery Division, Family Part, Middlesex
        County, Docket No. FG-12-0082-16.

        Deric Wu, Assistant Deputy Public Defender,
        argued the cause for appellant E.M. (Joseph
        E. Krakora, Public Defender, attorney;
        Kourtney J.A. Knop, Designated Counsel, on the
        briefs).

        Bruce P. Lee, Designated Counsel, argued the
        cause for appellant C.G. (Joseph E. Krakora,

Public Defender, attorney; Mr. Lee, on the briefs).

Lisa D. Cerasia, Deputy Attorney General, argued the cause for respondent (Christopher S. Porrino, Attorney General, attorney; Melissa H. Raksa, Assistant Attorney General, of counsel; Ms. Cerasia, on the brief).

Lisa M. Black, Designated Counsel, argued the cause for minors (Joseph E. Krakora, Public Defender, Law Guardian, attorney; Ms. Black, on the brief).

PER CURIAM

Defendants E.M. (Elena) and C.G. (Carl) are the parents of C.G. (Carl, Jr.), Ti.G. (Teresa), and Ta.G. (Tanya), who were born in 2006, 2007, and 2008, respectively. On June 29, 2013, the Division of Child Protection and Permanency removed these children[1] from their home on an emergent basis because both Elena and Carl had been incarcerated. Carl was charged (and later convicted) of aggravated assault with a deadly weapon, and Elena was charged with evidence tampering. The family judge, after a three-day trial, terminated Elena and Carl's parental rights to the three children.[2]

_____

[1] Elena has four other children, none of whom are now or were then in her care. Those four other children reside with their maternal grandparents; their relationship to Elena is not at issue here.

[2] In July 2014 in an earlier action, both Elena and Carl executed identified surrenders of the children in favor of the children's maternal grandparents, who, however, eventually expressed an inability or unwillingness to adopt. Consequently, the Division

A-0239-16T4

Elena and Carl separately appeal the judgment terminating their parental rights,[3] arguing the judge's findings were based on less than substantial evidence. Carl also argues that the Division's expert, Dr. Barry A. Katz, who performed psychological evaluations of both defendants and who evaluated defendants' relationships with the children, provided only a net opinion and, therefore, Carl claims the judge erred in relying upon Dr. Katz's opinions in terminating his parental rights.

Parents have a constitutionally protected right to the care, custody and control of their children. Santosky v. Kramer, 455 U.S. 745, 753, 102 S. Ct. 1388, 1394-95, 71 L. Ed. 2d 599, 606 (1982); In re Guardianship of K.H.O., 161 N.J. 337, 346 (1999). "The rights to conceive and to raise one's children have been deemed 'essential,' 'basic civil rights . . .,' and 'rights far more precious . . . than property rights.'" Stanley v. Illinois, 405 U.S. 645, 651, 92 S. Ct. 1208, 1212, 31 L. Ed. 2d 551, 558 (1972) (internal citations omitted). "[T]he preservation and strengthening of family life is a matter of public concern as

_____

commenced this action, again seeking the termination of defendants' parental rights.

[3] The appeals were consolidated and are both decided by way of this opinion.

being in the interests of the general welfare." N.J.S.A. 30:4C-1(a); see also K.H.O., supra, 161 N.J. at 347.

The constitutional right to the parental relationship, however, is not absolute. N.J. Div. of Youth & Family Servs. v. R.G., 217 N.J. 527, 553 (2014); N.J. Div. of Youth & Family Servs. v. A.W., 103 N.J. 591, 599 (1986). At times, a parent's interest must yield to the State's obligation to protect children from harm. N.J. Div. of Youth & Family Servs. v. G.M., 198 N.J. 382, 397 (2009); In re Guardianship of J.C., 129 N.J. 1, 10 (1992). To effectuate these concerns, the Legislature created a test for determining when a parent's rights must be terminated in a child's best interests. N.J.S.A. 30:4C-15.1(a) requires that the Division prove by clear and convincing evidence the following four prongs:

> (1) The child's safety, health or development has been or will continue to be endangered by the parental relationship;
>
> (2) The parent is unwilling or unable to eliminate the harm facing the child or is unable or unwilling to provide a safe and stable home for the child and the delay of permanent placement will add to the harm . . .;
>
> (3) The [D]ivision has made reasonable efforts to provide services to help the parent correct the circumstances which led to the child's placement outside the home and the court has considered alternatives to termination of parental rights; and

4

> (4) Termination of parental rights will not
> do more harm than good.

See also A.W., supra, 103 N.J. at 604-11.

The experienced judge applied these legal standards when examining the proofs and weighing the evidence. Because we are required to defer to a trial judge's findings when based on substantial credible evidence, N.J. Div. of Youth & Family Servs. v. F.M., 211 N.J. 420, 448 (2012), we find insufficient merit in Elena and Carl's arguments to warrant further discussion in a written opinion. R. 2:11-3(e)(1)(E). We provide only these brief comments.

As to Elena's arguments on the first prong, the judge found she placed the children at risk of both physical and emotional harm "due to her alcoholism and mental health problems," her "violent tendencies," and "[h]er lack of judgment." The judge also found Carl failed to live up to his parental obligations, as demonstrated by, among other things, his drug use and criminal involvement.

On the second prong, the judge found that both Elena and Carl have been unable or unwilling to correct the harm facing the children since removal. The judge found Elena

> has acknowledge[d] [] mental health problems
> since at least age thirteen. She concedes that
> medicine and therapy has not helped her with
> her anger outbursts. In this case[,] two of

A-0239-16T4

> her children were involved in her outbursts and in the initiating [June 29, 2013] incident [Elena] states she either stabbed someone or him them with a hammer. . . . She [] suffer[s] from black outs. The alcohol dependency has not abated since 2012. She has engaged in numerous detoxification and outpatient treatment programs but continues engaging in addictive behavior while in the programs.

The judge also found insufficient Elena's excuses for failing to engage in a recommended inpatient program.

The judge found that Carl had committed "multiple drug offenses" before the children were born and has been incarcerated at times since their birth because of drinking and the stabbing of someone in the marital home. Carl violated the terms of probation after the children's removal and failed to fulfill the conditions imposed by treatment programs as the Division attempted to reunite him with his children. Indeed, the judge recognized that even when the plan of reunification was "going well" in 2014, Carl chose to move back in with Elena and "joined her in addict[ive] behaviors," demonstrating to the judge that Carl "does not appreciate the danger and risk" of his choices.

While incarcerated, Carl was diagnosed with schizophrenia and post-traumatic stress disorders, and the judge found his "short[-]termed compliance with programs" "does not foreshadow future success." The judge, therefore, rejected the idea that Carl "can

be relied upon to change his ways and provide stability for his children within a reasonable period of time."

We need not discuss the judge's findings on the third prong; that prong was undoubtedly met. And, as to the fourth, we defer to the judge's determination that the children have done "very well with [their] foster mother." They are, according to the judge, "smart and socially adept" as demonstrated by their ability to endure the circumstances and the ebbing of any expectation their parents will provide for their needs.

Because all the findings were supported by substantial evidence deserving of credit, we affirm substantially for the reasons provided by Judge Jane B. Cantor in her well-reasoned thirty-five-page opinion.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0239-16T4